**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tracy Allen Hampton, | No. CV-14-02504-PHX-ROS |
| Petitioner, | <u>DEATH PENALTY CASE</u> |
| v. | **ORDER** |
| Joe Profiri[1], et al., | |
| Respondents. | |

Before the Court is Petitioner Tracy Allen Hampton's motion to alter or amend the judgment. (Doc. 108.) Respondents filed a response and Petitioner filed a reply. (Docs. 118, 119.) For the following reasons, Petitioner's motion is denied.

## I.    Applicable Law

A party may move a court to alter or amend a judgment within 28 days after the entry of the judgment. Fed. R. Civ. 59(e). "[T]here are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

---

[1] Joe Profiri, Interim Director of the Arizona Department of Corrections, is substituted for Charles L. Ryan, Director of the Arizona Department of Corrections, pursuant to Fed. R. Civ. P. 25(d)(1).

"[A]mending a judgment after its entry remains 'an extraordinary remedy which should be used sparingly.'" *Id.*

## II. Discussion

Petitioner asserts that this Court "committed manifest errors of law and fact" related to its denial of Claims 2, 3, and 4. The Court disagrees.

### A. Claim 2

In Claim 2, Petitioner alleged that his constitutional rights were violated when the trial court admitted the testimony of George Ridley, a jailhouse informant. Specifically, he alleged that the state's failure to timely disclose Ridley's presentence report violated *Brady v. Maryland*, 373 U.S. 83 (1963), and that the state's failure to correct inaccurate testimony by Ridley violated *Napue v. Illinois*, 360 U.S. 264 (1959). (Doc. 40 at 55–65.)[2] This Court concluded that Petitioner was not prejudiced by any alleged *Brady* error, and that any violation of *Napue* was not material. (Doc. 103 at 14–17.)

Petitioner asserts that when the Court denied Petitioner's *Brady* claim, it failed to consider the content of Ridley's presentence report, which included the opinions of Ridley's former wife and probation officer "that Ridley was being untruthful with regard to Hampton" and otherwise had a reputation for untruthfulness. (Doc. 108 at 9.) He asserts that this potential evidence was not cumulative to the impeachment offered during trial. Petitioner made these arguments in his reply in support of his petition (Doc. 68 at 30–33; *see also* Doc 40 at 60–61), and they remain unpersuasive.

"[W]hen defense counsel sufficiently impeaches a government witness in cross-examination and closing argument, the defendant cannot later claim a *Brady*[] violation on account of additional undisclosed evidence supporting the impeachment." *United States v. Kohring*, 637 F.3d 895, 908 (9th Cir. 2011); *see also Barker v. Fleming*, 423 F.3d 1085, 1100 (9th Cir. 2005) (finding no materiality where undisclosed impeachment evidence "was not the glue holding together the prosecution's case" and "heaped-on impeachment evidence" would not have altered the witness's "already shattered credibility"). Ridley

---

[2] These citations refer to the document and page numbers generated by the Court's Case Management/Electronic Case Filing system.

was cross examined regarding the truthfulness of his testimony, the basis for his testimony, and his motives to lie. This impeachment occurred during the guilt phase of trial (RT 4/30/02 at 73–75, 97, 105–19) as well as the penalty phase of trial (RT 1/16/03 at 29–38). The content of Ridley's presentence report reiterated that Ridley's incarceration gave him a motive to lie about Hampton's case—it did not provide any "new and different ground of impeachment." *Barker*, 423 F.3d at 1097.

Petitioner emphasizes that although trial counsel presented evidence that Ridley had been arrested for stalking and adamantly wanted to avoid incarceration, counsel allegedly failed to establish that Ridley wanted to avoid incarceration for the specific purpose of pursuing his "obsess[ion] with stalking his ex-wife." (Doc. 108 at 10.) This is not a new or different ground on which to impeach Ridley. Ridley testified extensively about the charges against him, the possibility that he would be incarcerated for a significant period of time, and his plea agreement with the state, and he ultimately conceded that he was willing "to testify and say whatever it took" to avoid incarceration. (RT 4/30/02 at 105–12, 114–20; *see also* RT 1/16/03 at 29–38.) Additional testimony regarding the precise reasons Ridley wanted to avoid incarceration would have been cumulative to the extensive testimony regarding Ridley's plea agreement and his admission that he was willing to lie in court. Petitioner did not establish that there is any probability that the additional information contained in Ridley's presentence report regarding his stalking habits would have had any impact on the jury's verdict. *See Browning v. Baker*, 875 F.3d 444, 464 (9th Cir. 2017) ("Under *Brady*, evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'").

Petitioner next asserts that the Court erred in concluding that any *Napue* violation was not material because the standard for materiality under *Napue* is low (Doc. 108 at 13–14), and Ridley's credibility was not as thoroughly impeached during the penalty phase as it had been during the guilt phase (*id.* at 14–15). The Court again disagrees that the alleged *Napue* error could have had any effect on the penalty-phase verdict.

Petitioner agrees (Doc. 108 at 13) that the standard for materiality under *Napue* is whether "there is '*any* reasonable likelihood that the false testimony *could* have affected the judgment of the jury.'" *Jackson v. Brown*, 513 F.3d 1057, 1076 (9th Cir. 2008) (quoting *Hayes v. Brown*, 399 F.3d 972, 985 (9th Cir. 2005)). Here, it is not reasonably likely that the state's failure to correct Ridley's misleading testimony could have affected the jury's judgment.

During the penalty phase, Ridley was asked: "[D]id you ever commit any violence against your ex-wife," and Ridley answered "No." (RT 1/16/03 at 38–39.) This answer was potentially misleading because Ridley had acted in a physically aggressive manner toward his wife in the past. However, the jury was already aware that Ridley's credibility was in question. Ridley testified about his motive and willingness to lie, including by admitting on cross-examination that he "want[ed] to do everything [he] could to minimize [his] stay in prison" and was willing "to say whatever it took to have [himself] found not guilty." (*Id.* at 33.) "A witness may be 'so thoroughly impeached' that even evidence of perjury at trial is 'merely cumulative.'" *Heishman v. Ayers*, 621 F.3d 1030, 1035 (9th Cir. 2010) (quoting *United States v. Polizzi*, 801 F.2d 1543, 1551 (9th Cir. 1986)); *see also Morris v. Ylst*, 447 F.3d 735, 746 (9th Cir. 2006) (rejecting a *Napue* claim where "the jury already was shown that [the witness] was completely inconsistent and dishonest, that is, that she was a liar in at least some respects"). Evidence that Ridley arguably perjured himself when he testified that he did not "ever commit violence toward his wife" was cumulative in light of the substantial impeachment offered during the penalty phase. Because it is not reasonably likely that correcting Ridley's brief testimony regarding his propensity for violence toward his ex-wife could have affected the jury's penalty-phase verdict, this Court did not commit manifest error in concluding that the alleged violation of *Napue* was not material.

Petitioner further asserts that the Court failed to consider the overall strengths and weaknesses of the state's case against him when considering his *Brady* and *Napue* claims. For example, Petitioner again emphasizes that the state's primary witness, Misty Ross,

gave inconsistent testimony regarding details such as the precise location of a victim's body, and that another individual, Tim Wallace, confessed to the crimes. This information was before the Court when it rejected Claim 2, and Petitioner's assertion that the Court failed to appreciate the strength of the state's case is without merit.

Petitioner next alleges that the Court erred in not considering whether the potential cumulative impact of the alleged *Brady* and *Napue* violations was sufficient to warrant relief. Petitioner did not establish that his allegations under *Napue* and *Brady*, when considered together, deprived him of "a verdict worthy of confidence." *Jackson*, 513 F.3d at 1076 (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). Counsel made it known to both the guilt- and penalty-phase jurors that Ridley had a history of saying anything necessary to avoid the consequences of his actions. There is no likelihood that the verdicts could have been affected had the state both provided counsel with Ridley's presentence report and corrected Ridley's testimony regarding whether he ever acted violently toward his wife.

Finally, as a part of Claim 2, Petitioner had alleged that his counsel was ineffective for failing to adequately investigate Ridley, including by failing to obtain his presentence report. (Docs. 40 at 64–65; 68 at 50–54.) The Court denied this claim on its merits. (Doc. 103 at 17.) *See United States v. Olsen*, 704 F.3d 1172, 1187 (9th Cir. 2013) ("If the withheld information does not constitute a *Brady* violation for lack of materiality, its absence likewise will not support an ineffective assistance of counsel claim."). Petitioner now argues that the Court erred in denying this subclaim because it did not consider the cumulative prejudice resulting from all of trial counsel's alleged ineffective assistance. The Court, however, did not conclude that counsel was ineffective during the guilt (Claim 3) or penalty (Claim 4) phases of Petitioner's trial, and therefore there is no resulting prejudice that the Court could evaluate cumulatively with respect to the effect of the counsel's alleged failure to adequately investigate Ridley.

Petitioner has not established that the Court committed manifest error with regard to Claim 2.

**B.     Claim 3**

In Claim 3, Petitioner alleged that his trial counsel was ineffective during the guilt-phase of his trial for "failing to call necessary witnesses and present relevant evidence." (Doc. 40 at 66.)  This Court concluded that Petitioner raised this claim in state court, and additional evidence supporting this claim did not render it fundamentally altered and unexhausted.  (Doc. 103 at 18.)  The Court then denied Claim 3 under § 2254(d).  (*Id.* at 21.)

Petitioner asserts that the Court erred in concluding that Claim 3 was not fundamentally altered because "adding the allegation that counsel were deficient by failing to acquire the Ridley impeachment evidence" put this claim in a "significantly different and stronger evidentiary posture."  (Doc. 108 at 17.)

Petitioner did not make this allegation as a part of Claim 3 in his petition.[3]  (*See* Doc. 40 at 66–78.)  Rather, as discussed above, Petitioner raised this allegation as a part of Claim 2 (Docs. 40 at 64; 68 at 50–54), and the Court rejected that claim on its merits (Doc. 103 at 17).  But even assuming Petitioner added his allegation regarding the investigation and impeachment of Ridley as a part of Claim 3 (*see* Doc. 68 at 75–76), adding a meritless allegation could not "fundamentally alter" Claim 3 by placing it in a stronger evidentiary position.  This Court did not commit manifest error when it concluded that Claim 3 was adequately raised before the state courts.

Petitioner next argues that the state PCR court was unreasonable in its application of *Strickland* when it denied Claim 3.  (Doc. 108 at 18–24.)  Specifically, Petitioner alleges that the state court was not permitted to consider the possible reasons that counsel acted as

---

[3] In support of his assertion that he raised this allegation as a part of Claim 3, Petitioner cites page 66 of his petition, which does not contain allegations that counsel was deficient for failing to obtain Ridley's presentence report.  (*See* Doc. 40 at 73.)  He then cites pages 69 and 70 of his reply in support of his petition, in which he argues that his post-conviction counsel's failure to argue that his trial counsel was ineffective for failing to obtain Ridley's presentence report establishes cause and prejudice to overcome the alleged default of Claim 3.  (*See* Doc. 69 at 78–79.)  In contrast, both his petition and reply in support of his petition include the allegation that his constitutional right to counsel was violated by his trial counsel's failure to obtain Ridley's presentence report as a part of Claim 2.  (Docs. 40 at 64–65; 68 at 50–54.)

they did and could not have found counsel's conduct reasonable based on the stated division of labor between the two trial attorneys.

The PCR court was not unreasonable for concluding that counsel's representation did not violate *Strickland*. Lead counsel knew of the evidence Petitioner now alleges should have been presented to the jury, but did not present that evidence, either directly or through co-counsel. Lead counsel did not recall why he did not present the evidence in question. The PCR court reasoned, however, that "the decision to call or to refrain from calling certain witnesses and present evidence related to the third-party defense were tactical decisions, and . . . counsel was not ineffective for failing to call the identified witnesses." (Doc. 54-3 at 183.)

Petitioner, without citing supporting authority, alleges that the PCR court's decision was unreasonable because a court may only consider the possible reasons for counsel's actions when § 2254(d) deference applies. (Doc. 108 at 19–20.) The Court disagrees. A court's obligation to consider the possible bases for counsel's actions is required by *Strickland* itself. *See Gulbrandson v. Ryan*, 738 F.3d 976, 988 (9th Cir. 2013) (explaining that the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" under *Strickland* "means that not only do [courts] 'give the attorneys the benefit of the doubt,' [but] must also 'affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did'").

Furthermore, such an inquiry is not the type of ad hoc rationalization of counsel's conduct the Court examined in *Wiggins v. Smith*, 539 U.S. 510, 526–27 (2003). In *Wiggins*, the petitioner's attorneys conducted an inadequate investigation before performing an insufficient mitigation presentation. *Id.* at 523–27. The Court concluded that counsel had acted unreasonably. *Id.* at 526–27 ("[C]ounsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentencing strategy impossible."). The Court then faulted the state courts for rationalizing counsel's conduct, post hoc, as "strategic" when it was clear from the record that counsel could not

have made an objectively reasonable strategic decision without first conducting an adequate investigation. *Id.*

Here, in contrast, lead counsel had obtained the information Petitioner argues should have been used during the guilt phase of trial but did not seek to have it admitted during trial. The PCR court examined the objective reasonableness of lead counsel's conduct and concluded that he was not unreasonable for failing to introduce this information because it was either subject to "considerable impeachment" or would not have been admitted into evidence. (Doc. 54-3 at 182–84.) This was not a post hoc rationale to excuse counsel's conduct—it was an analysis of what a reasonable attorney would have done under the circumstances, as required under *Strickland*.

The PCR court's conclusion was not unreasonable, and this Court did not commit manifest error in denying Claim 3.

## C. Claim 4

Petitioner next alleges that this Court did not address his procedural arguments with respect to Claim 4A. (Doc. 108 at 24.) Claim 4 alleged that Petitioner's counsel was ineffective with respect to the investigation and presentation of mitigating evidence. (Doc. 40 at 79; Doc. 68 at 89.) Petitioner notes that this claim had two parts: Claim 4B challenged the state PCR court's rejection of his claim that his trial counsel was ineffective during the penalty phase and Claim 4A again claimed that his trial counsel was ineffective during the penalty phase, but included additional evidentiary support that had not been presented in state court, including evidence of a fetal alcohol spectrum disorder and post-traumatic stress disorder.

Petitioner claimed, in his reply in support of his petition, that this additional evidence rendered Claim 4A a "substantially improved" and "significantly different," and therefore unexhausted, version of Claim 4B. (Doc. 68 at 123–24.) Petitioner then asserted the procedural default of Claim 4A could be excused because of the ineffective assistance of state post-conviction counsel. Petitioner now argues that the Court erred by failing to consider whether he had demonstrated cause to excuse the procedural default of Claim 4A.

Alternatively, Petitioner asserts that Claim 4, considered in its entirety as a single claim, is fundamentally altered from the claim presented to the state courts and thus unexhausted and procedurally defaulted. Both arguments fail.

In state court, Petitioner offered, and the PCR court evaluated, mitigating evidence that Petitioner's trial counsel allegedly failed to present, including evidence of prenatal alcohol exposure and a "range[]" of potential mental health disorders. (Doc. 51-2 at 18–20; Doc. 54-3 at 187–94.) The additional evidence Petitioner offered in this Court to support Claim 4 did not create a new claim that "bears little resemblance" to the penalty-phase *Strickland* claim Petitioner brought in state court. *See Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014). To the contrary, Petitioner's PCR petition contained detailed allegations that his trial counsel failed to adequately explore his potential mental disorders and cognitive defects, including the effects of prenatal alcohol exposure, and failed to explain to the jury how Petitioner's cognitive defects related to the crime. (Docs. 51-2 at 6, 19–21; 53-2 at 29–31, 34–35; 54-3 at 187, 192–94.) The additional evidence offered in this Court—evidence that Petitioner could have a partial fetal alcohol spectrum disorder and suffered from PTSD—supports the claim Petitioner raised in state court without substantially strengthening or altering it. *See Weaver v. Thompson*, 197 F.3d 359, 364–65 (9th Cir. 1999) (new evidence offered to support a previously raised legal claim does not render the claim "fundamentally altered" in federal court); *see also Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). As Claim 4 is the same claim Petitioner raised in state court, this Court did not err in failing to consider whether Petitioner established cause to excuse the default of Claim 4.

Petitioner further asserts that this Court erred in finding that the state PCR court's adjudication of Claim 4 was not unreasonable. Petitioner raises the same arguments and emphasizes the same evidence as in his habeas petition, which this Court rejected for reasons explained in its previous order. (Doc. 103 at 25–27.)

Petitioner has not established that this Court committed manifest error when it denied Claim 4.

### D. Certificates of Appealability

Finally, Petitioner argues that the Court should grant a certificate of appealability "for each of the[] issues" discussed above. (Doc. 108 at 29.) As stated in this Court's prior order, a certificate of appealability may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a certificate of appealability will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

As this Court previously concluded, reasonable jurists could not dispute the viability of the above claims. The arguments Petitioner offers in his motion do not alter this conclusion.

### III. Conclusion

Petitioner has not met the requirements of Rule 59(e). Accordingly,

**IT IS ORDERED** denying the motion (Doc. 108).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall, pursuant to Fed. R. Civ. P. 25(d), substitute, as a Respondent, Joe Profiri for Charles L. Ryan as Interim Director of the Arizona Department of Corrections. The Clerk shall update the title of this case to reflect this substitution.

Dated this 16th day of October, 2019.

Honorable Roslyn O. Silver
Senior United States District Judge